In re CITIZENS FIDELITY BANK AND TRUST COMPANY, as Trustee Under Will of Clarence F. Bryan for Frances Bryan Hoke.

William C. BRYAN and Maude E. Bryan, Appellants,

v.

William M. HARVIN, Appellee.

Court of Appeals of Kentucky.

April 15, 1977.

Martin Roach, Roach, Cox & Brown, Louisville, for appellants.

William M. Harvin, Harvin & Runner, Louisville, for appellee.

Before COOPER, REYNOLDS and VANCE, JJ.

COOPER, Judge:

This is an appeal from a judgment of the Jefferson Circuit Court awarding the Appellee, William M. Harvin, certain fees for the sale of real estate located in Jefferson County, Kentucky. A part of said Order and Judgment is as follows:

"1. William M. Harvin is hereby entitled to, and hereby awarded a fee in the amount of $81,595.00, subject to a credit of $18,793.20 heretofore paid; subject to Arthur W. Howard, Trustee, completing and fulfilling the terms of the sale entered into April 1, 1975, said sum shall be paid one-half by Citizens Fidelity Bank and Trust Company, Trust Department; and one-half by William C. Bryan and Maude E. Bryan, his wife.

2. In the event Arthur W. Howard, Trustee, should not be required to complete and fulfill the terms of the Contract and sale for reasons mentioned in this Contract dated April 1, 1975, then William M. Harvin shall be entitled to and hereby awarded an additional fee of $20,000.00 for services rendered in this matter, payable fifty (50%) percent by Citizens Fidelity Bank and Trust Company, Trust Department; and fifty (50%) percent by William C. Bryan and Maude E. Bryan, his wife."

On April 1, 1942, Clarence F. Bryan died testate survived by his wife, Margaret C. Bryan and their children, William C. Bryan and Frances Bryan Hoke.

The Trustee qualified on February 6, 1968, and the Appellee, William H. Harvin was retained as Attorney for the estate.

On March 26, 1973, the Trustee and Mr. and Mrs. Bryan entered into a contract for the sale of the Bryan Farm to John S. Sherman, et al for the consideration of $980,000.00. Appellee was paid a sum of $15,000.00 for legal services to this date.

Subsequently, John S. Sherman and his partner refused to purchase this property and Appellee filed a specific performance suit, which was later settled for the sum of $24,683.85.

John S. Sherman, one of the defaulting purchasers, entered into another contract with Trustee and the Bryans for sale of same property at same purchase price, $980,000, all of which was approved by the Court under the legal direction of the Appellee. For his services the Appellee was paid a fee of $18,793.20.

On April 15, 1975, Appellee went to the hospital where Mr. Bryan, age 77, was recuperating and Mr. Bryan signed a letter authorizing a fee equal to ten (10%) percent of total proceeds received, which was later repudiated by Mr. Bryan.

On August 4, 1976, Appellee sought an ex parte order to award him a fee in the amount of $101,993.80 (less $18,793.20 he had been paid) for preparing a six-page contract for sale of lands and other services rendered.

The Chancellor determined that Appellee, Harvin, was entitled to a fee of $81,595, less the $18,793.20 he had been paid if this contract is consummated by purchases, if not he is awarded a fee of $20,000 in addition to the $18,793.20.

The question presented to this Court is whether or not the Chancellor abused his discretion in awarding Appellee, William M. Harvin, an attorney's fee of $81,595 for preparing a six-page Contract providing for the contingent sale of a farm when two years earlier he had been paid a fee for preparing an eight-page Contract for the sale of the same farm at the same sales price.

In determining a fee, the Court in *Boden v. Boden*, Ky., 268 S.W.2d 632 (1954) considered the following factors:

(a) Amount and character of services rendered

(b) Labor, time and trouble involved

(c) Nature and importance of the litigation as business in which services were rendered

(d) Responsibility imposed

(e) The amount of money as the value of property affected by the controversy, as involved in the employment

(f) Skill and experience called for in the performance of the services

(g) The professional character and standing of the Attorneys

(h) The results secured

We recognize that fixing fees in cases of this type is a delicate matter for the Court. However, as stated in *Brickell v. Di Pietro*, 152 Fla. 429, 12 So.2d 782:

"[It] should be done with a view to common sense realism, that is to say, it should pose an amount that public standards will approve for the work done, time consumed and the skill required."

This Court is unable to determine from the record in this case whether or not the Trial Court abused its discretion in awarding this fee. It is our opinion that the record does not adequately reflect the

basis upon which the fee was allowed. Appellee prepared a contract for the sale of the farm in March 1973, and was paid $15,000.00 for his services. The purchasers defaulted and Appellee filed a suit for specific performance. This suit was settled and Appellee was paid a fee of $18,793.20 for his services.

The record does not make it plain what the settlement consisted of. Appellee argued that the settlement was for cash and after the settlement he entered into further intricate negotiations which resulted in another contract of sale and he has not been paid for his services in drafting this contract as well as finding a buyer and negotiating the sale.

On the other hand, Appellants argued that the re-negotiation of the new sale was a part of the settlement of the suit for specific performance, and Appellee has been fully paid for the filing and settlement of that suit.

If the re-negotiation of one sale and the new contract were, in fact, a part of the settlement of the suit for specific performance, the Appellee has already been paid for his services and is not entitled to an additional fee. If, on the other hand, the specific performance suit was settled for cash payments, the fee paid to Appellee for his services in connection with the filing and settlement of the lawsuit would not preclude his right to an additional reasonable fee for services rendered subsequent to the settlement.

The Trial Court should make findings as to whether the settlement of the specific performance suit was conditioned upon the re-negotiation of the sale. If it was not, the findings should detail in a more specific way what services were rendered after the settlement and the fee deemed appropriate therefor. The findings should be sufficiently specific that the Court of Appeals will have a proper basis for review and if new evidence is necessary for the Court of Appeals to make such findings, each party should be given leave to present further evidence.

The Judgment of the Court is reversed and remanded to the Circuit Court for further proceedings consistent with this opinion.

All concur.